## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

**IN RE:**

**JORGE L DIAZ FIGUEROA**

**CASE NO.: 08-07137 SEK**

**DEBTOR**

**CHAPTER 13**

### RESPONSE TO TRUSTEE'S SURREPLY

**TO THE HONORABLE COURT:**

Comes now attorney for Debtor and respectfully alleges and prays as follows:

1. As stated by the Trustee in his Surreply of March 5, 2009 paragraph 5, the issue before this Court is one that has arisen after the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act (hereinafter "BAPCPA") amendments to the Bankruptcy Code, mainly how is "projected disposable income" defined for an "above-median income" debtor [AMI].

2. The basic issue of the definition of "disposable income" and how "projected disposable income" is determined under BAPCPA is also before this Court in the case of In Re Richard A. Parrilla Diaz, Case Number 07-05531 SEK.

3. The case of *In re Parrilla Diaz* also has many similarities with our debtor. The similarities in the issues are such that Debtor requests leave and the permission of this Honorable Court to make the "Debtor's Memorandum of Law in Support of Plan Confirmability" filed in the Parrilla case on May 12, 2009, docket item 62 part of this Response.

4. Debtor's attorney has collaborated in said document and concurs completely with the arguments and conclusions found therein. Counsel Lyssette A. Morales, attorney for Richard A. Parrilla Diaz, agrees with this request. Combining the two cases for the purpose of clarifying the basic issues involved serves to secure a just, speedy and inexpensive determination of these cases and proceedings (Federal Rules of Bankruptcy Procedure, Rule 1001).

5. The Memorandum of Law in Support of Plan Confirmability filed in the Richard A. Parrilla Diaz case number 07-05531 SEK is attached to and made a part of this document.

## FACTUAL BACKGROUND

6. In the case at bar the Debtor is a retired veteran of the United States Armed Forces who is single and receives $1,179.00 in social security disability benefits and $2,527 from a Veteran's Administration pension.

7. The Debtor lives on a fixed income that was the same before and after filing of the bankruptcy petition.

8. The income has not changed from that stated in Official Form 22C.

9. Debtor's income is above the state median income for a family of one as determined in the Statement of Current

Monthly Income and Calculation of Commitment Period and
Disposable Income [Official Form 22C] (see line items 16
and 17 of Form 22C).

10.    His Monthly Disposable Income under § 1325(b)(2) is
$0.00, or more accurately a negative -$173.00 (see line
item 59), and his monthly net income on Schedule J is
$300.00.

11.    Debtor's liquidation value has been fixed at zero.

12.    His plan proposes monthly payments of $300.00 a month
during 60 months for a total of $18,000.00, all of which is
to pay unsecured creditors and administrative fees, except
for a $435.00 secured debt to secured creditor Doral Bank.

13.    The pro-rata distribution to the unsecured creditors
represents approximately 20% of the scheduled claims.

## SIMILARITIES OF DEBTORS PARRILLA & FIGUEROA

14.    Both debtors are above median income debtors as
defined under BAPCPA and both have negative disposable
income under Form 22C.

15.    Despite the negative disposable income in both cases,
both debtors have adjusted their household expenses and/or
as in the instant case, debtor has voluntarily offered part
of his Social Security benefits to enable him to fund a

chapter 13 plan which BAPCPA pretends to encourage, instead of filing a chapter 7.

16.    Debtors in both cases could have filed a chapter 7 with a negative disposable income showing no assumption of abuse.

17.    Both cases involve above median income debtors whose incomes or current monthly income [CMI] have not suffered any significant changes prior to petition date or close to confirmation date.

## TRUSTEE OBJECTS USE OF $300
## TO ASSIST DAUGHTER'S STUDIES

18.    In this case, Trustee objects the use by the debtor of $300 to assist his daughter with her graduate studies.

19.    In objecting to this expense Trustee loses sight of fundamental changes under BAPCPA:

    (A)  Debtor's current monthly income [CMI] of $2,527 from his VA pension is not sufficient, according to the National and IRS Standards, or in actual fact, for his own subsistence, reflecting a negative disposable income on Form 22C, thus there is no requirement for payment of any amount to unsecured creditors in this case; Refer to §1325(b)(3) and §707(b)(2).

    (B)   Debtor's Social Security benefits of $1,179 are excluded from the computation of CMI and under no interpretation of the law is he required to use these funds for payment to creditors;

    (C)   Debtor has voluntarily included his Social Security benefits of $1,179 in Schedule I to allow him to fund his plan; Refer to §101(10A)(B) & Title 42 U.S.C. §407(a);

    (D)   Debtor has filed chapter 13 to voluntarily pay creditors although he more than qualifies for relief under chapter 7, a choice BAPCPA precisely seeks to encourage.

## USE OF A PORTION OF SOCIAL SECURITY BENEFITS

20.    Debtor asserts that he is not obligated by law to use the $1,179 received from SSA for payment of his creditors although he can as he has, offered a portion of these excluded funds for the funding of his plan.

21.    The portion of these Social Security benefits that Debtor is using to assist his daughter cannot be denied by the Bankruptcy Court under either §101(10A)(B) or Title 42 U.S.C. §407(a) and current case law.

22.    CMI excludes benefits received under Social Security

Administration at §101(10A)(B). In light of the exclusion of Social Security benefits from the CMI calculation a court cannot compel a debtor to fund a plan using this income. This does not preclude a debtor's option of "voluntarily devoting a portion of that income to a chapter 13 plan. *Schanuth*, 342 B.R. at 605. See also *In re Rotunda*, 349 B.R. 324 (Bankr ND NY 2006) (sanctioning the use of a portion of Social Security benefits to comply with the "best interests of creditors test.") Court may consider the voluntary devotion of Social Security benefits as income in the disposable income and feasibility analyses.

23. This is consistent with the Bankruptcy Code permitting a chapter 13 plan with a provision for payments of claims "from property of the estate or property of the debtor . . ." §1322(b)(8).

24. Title 42 U.S.C. §407(a) protects the right of any person to any future payment under SSA "shall not be transferable or assignable, . . . nor any of the moneys paid or payable shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

**REASONABLENESS & NECESSITY OF EXPENSES IN AMI DEBTOR IS DETERMINED AS PER NATIONAL & IRS STANDARDS §707(b)(A) & (B)**

25. Although debtor here argues that the $300 expense for assistance to his daughter for graduate studies is both reasonable and necessary under both bankruptcy and State law, debtor also argues that Trustee's objection in this sense fails to understand that BAPCPA has, in an above median income debtor, eliminated the ability of the Trustee to challenge expenses, however outrageous or unnecessary, although debtor's expenses are both reasonable and necessary.

26. With the new definition of disposable income under §1325(b)(3) which in turn directs that the determination of 'reasonable and necessary' to §707(b)(2), BAPCPA has eliminated the need of Courts or the ability of Trustee to question the reasonableness or necessity of an AMI debtor's expenses already determined under the National and IRS Standards.

27. BAPCPA does however, continue to permit a challenge to the reasonableness or necessity of expenses in the context of a below income debtors [BMI], where §1325(b)(2) makes no reference to subparagraphs (A) and (B) of §707(b).

28. Under prior law the old definition of disposable income was general and not separate for above or below

median income debtors as under the new definition of disposable income under BAPCPA.

29. Trustee's challenge to the $300 expense to assist debtor's daughter in her graduate studies on Schedule J is misplaced. Section 707(b)(2) has already determined the reasonableness and necessity of the allowable expenses under National and IRS Standards.

30. Debtor's CMI is a negative -$173.00 under Form 22C and in his Schedule J reflects a net monthly income of $300.00 only through the use of Social Security benefits received in the amount of $1,179.

## CHILD SUPPORT ISSUE

31. At the confirmation hearing of March 13, 2009 the Court ordered Debtor to address the issue concerning why the expenses of helping his daughter of 26 years who attends graduate school should be allowed as an expense.

32. This issue was brought to the hearing verbally by the legal representative of creditor FirstBank de Puerto Rico. FirstBank has not filed a written objection related to this issue; therefore creditor First Bank has not specified the law or facts that support its verbal objection in this regard.

33.     Nevertheless, Debtor will provide a briefing on the
law of Puerto Rico on the subject as ordered by the Court.

34.     Debtor understands that he has an obligation to
continue support to his daughter to the economic extent
possible both morally and legally.

35.     There are two types of support mentioned in the Civil
Code of Puerto Rico, 1930, Article 142.

36.     Article 142 known also as Section 561 provides a
definition of Support (Alimentos) as everything that is
indispensable for the sustenance, housing, dress and
medical attention, according to the social position of the
family.

37.     Support also includes education and instruction of the
recipient when he is a minor.

38.     This definition includes child support and support
amongst family members (alimentos entre parientes).

39.     Article 143 known as Section 562 explains who is
obligated to provide support reciprocally. This includes
support between spouses, between parents and children, and
others.

40.     The leading case *Key Nieves v. Oyola Nieves*, 1985, 116
D.P.R. 261 has established that the legal responsibility of

providing support to a child does not cease because the child reaches majority of age. When someone begins studying for a profession or trade while he is a minor, he has the right to request the person providing the support to continue providing the means necessary to finish his studies, even after having acquired legal age.

41. After having acquired legal age the support is based on support amongst family members (alimentos entre parientes), therefore no age limit exists.

42. At page 266 the *Key Nieves* opinion states that university studies have ceased to be a luxury and are now a necessity.

43. The continued obligation of the parent to pay the totality of "post-graduate studies" is decided on a case by case basis depending on the ability to pay and the necessity of the recipient. The student must demonstrate that he is worthy to receive said economic assistance based on his attitude as demonstrated by his efforts, on the aptitude for the studies as manifested in the academic standing obtained, and on the reasonableness of the desired objectives.

44. Debtor's daughter is a 26 year old graduate student of

Criminal Justice at the Interamerican University in Rio
Piedras, Puerto Rico. She lives with her mother who is
unemployed.

45. Debtor has listed in Schedule J that he provides his
daughter with $300.00 a month for her professional studies.
This is a minimum amount of economic assistance for a
graduate student at this institution.

## CASES BEFORE THE SUPREME COURT
## OF THE UNITED STATES

46. This Court also instructed the Debtor to state the
cases that are before the Supreme Court. The cases are
*Craig M. Frederickson v. David D. Coop*, 545 F 3d 652 (8th
Cir. 2008) Supreme Court Number 08-950, in which the writ
of certiorari was denied on March 23, 2009. The other is
*Jan Hamilton, Chapter 13 Trustee, v. Stephanie Kay Lanning*,
*Hamilton v Lanning*, 545 F.3d 1269(10th Cir. 2008).

47. We remit to the Memorandum of Law in the *Parrilla Diaz*
case, in its analysis of the three (3) Circuit Court cases
on the issue of 'disposable income' and how this is
projected in above median income debtors, two of which were
taken up to the U.S. Supreme Court on writs of certiorari
and *Kagenveama* which is from the Ninth Circuit Court of

Appeals that was not taken up on appeal to the U.S. Supreme
Court.

48.     The *Parrilla Diaz* Memorandum of Law cites a fourth
bankruptcy case that is pending before the Seventh Circuit
Court of Appeals on appeal *In re Turner*, 384 B.R. 537
(Bankr. S.D. Ind. 2008) aligning itself with the Ninth
Circuit Court case of *In re Kagenveama*, and the
"Mechanical" or "plain language" approach in which amounts
paid to unsecured creditors are determined by
mathematically projecting disposable income over the term
of the debtor's plan.

49.     The Frederickson case arises from a decision of the
United States Court of Appeals for the Eight Circuit that
reversed a decision of the Bankruptcy Appellate Panel.

50.     Frederickson uses a "forward looking approach" which
much like pre BAPCPA case law directs courts to consider
the debtor's actual income and expenses at the time of
filing.

51.     A third category of decisions find the mathematical
determination of "projected disposable income"
presumptively correct, subject to a showing of "substantial
change in circumstances." *In re Lanning*, 545 F 3d 1269

(10th Cir. 2009), which is the approach also taken by *Kibbe*, 361 B.R. 302 (BAP 1st Cir. 2007).

52.    The Lanning case is a petition for a writ of certiorari to the United States Court of Appeals for The Tenth Circuit. The Supreme Court of the United States to this date has not expressed its intention to deny or grant the certiorari.

53.    The Tenth Circuit held that the Chapter 13 Debtor's statutory "disposable income" calculation may be disregarded upon an "adequate showing of changed circumstances". *Hamilton v Lanning*, 545 F.3d 1269, 1282 (10th Cir. 2008).

54.    It is significant to note that in the Lanning case the Trustee objected plan confirmation asserting that debtor must pay to her unsecured creditors the net result of Form 22C and also that debtor's plan must run 60 months, the appropriate "applicable commitment period" for a debtor with above-median income, rather than the proposed 36 months.

55.    Under these circumstances, the Debtor believes he does not have to increase the base of his plan dated November 11, 2008 and request that it be confirmed.

**WHEREFORE**, the Debtor prays that this Honorable Court deny Trustee's motion to dismiss for the above stated reasons and confirm Debtor's plan dated November 11, 2008.

**CERTIFICATE OF SERVICE:** I hereby certify that on May 18, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notifications of such filing to the following: Alejandro Oliveras, Chapter 13 Trustee.

May 18, 2009

Sonia A. Rodríguez Rivera 117414
Otto E. Landrón Pérez 202706
Landrón & Rodríguez Law Offices
Attorneys for Debtor
PO Box 52044
Toa Baja PR 00950-2044
Tel 795-0390 / Fax 795-2693
Corozal: 802-3844 Tel & Fax
Email: landrodz@onelinkpr.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE

RICHARD A. PARRILLA DIAZ

Urb. Villa Borinquen

A 25 Calle Yucayeque

Caguas00725-8008
SSN: XXX-XX-5381
    Debtor

BANKRUPTCY 07-05531 SEK

CHAPTER 13

# DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF PLAN CONFIRMABILITY

TO THE HONORABLE COURT:

COMES NOW debtor through his legal representation who respectfully submits his Memorandum of Law to be read in conjunction with d.e. #61 which contains I Summary of Trustee's Fifth Objection to the Amended Plan dated March 5, 2008 [d.e. #33] and II Statement of Case:

## FACTUAL BACKGROUND

Debtor's Form B22C, filed on September 27, 2007, shows that the Debtor has a current monthly income ("CMI") of $4,243.44 and an annualized CMI of $50,921.28.[1] Because the Debtor's annualized CMI exceeds the amount of the applicable median family income, the Debtor is "above-median". After taking statutorily permitted and actual expenses,[2] Form B22C reflects that the Debtor has negative disposable income in the amount of (-$1,231.64).[3] Schedule

---

[1] Part III Application of §1325(b)(3) for Determination of Disposable Income at Subpart A & D Total Deduction Allowed Under §707(b)(2) of Form 22C at d.e. #1.

[2] Deductions allowed under §707(b)(2) using the National and Local Standards of Internal Revenue Service

[3] Line 58 of Form 22C computed pursuant to §1325(b)(2). **Part V Determination of Disposable Income Under §1325(b)(2)** at d.e. #1.

1

I reflects total monthly income of $2,695.19[4] and Schedule J reflects monthly expenses of $2,315.00, leaving "monthly net income" on Schedule J of $380.

The most significant reason for the difference between Form B22C and Schedules I and J, is the addition to debtor's CMI, of the pro-rating of his tax refunds and bonus at $636.50 monthly and debtor's lower expenses for food, clothing, and other household expenses than the National and Local Standards of Internal Revenue Service. Congress has determined that the Debtor, under the applicable IRS guidelines, is permitted to claim reasonable living expenses of $1,203.00 (for food, clothing, household supplies, personal care and other miscellaneous items). *See* Form B22C, line 24. However, Schedule J shows that the Debtor spends only $995.00 on such items, or $208.00 less than the amount Congress has determined to be reasonable. Debtor also keeps his utility expenses at $250.00 under the $375.00 permitted by the IRS and other household expenses which debtor and his family skimp on to off set the deficit in his budget, and by including the pro rating of tax refunds and bonus of $ 636.50 monthly and the pro rating of extraordinary household expenses on Schedule J.

The Debtor's Plan proposes using, in part, the savings from these two categories to pay $380 per month to his creditors through the Chapter 13 Trustee for 60 months, despite his negative disposable income on Form 22C. Pursuant to Form 22C, debtor's Plan requires debtor to pay zero to his unsecured creditors during 60 months. Thus debtor's Amended Plan dated March 5, 2008 proposing to pay $380 during 60 months, pays in excess what Form 22C dictates with a negative disposable income. These funds will be used to pay (a) counsel fees of $525, (b) the trustee's commission of $2,280, (c) the amounts needed to pay the secured debt on his 1999 Ford Expedition and a 2005 Suzuki motorcycle and household furniture of approximately $7,800 plus interest,[5] and (e) approximately $10,000 or more to unsecured creditors, or approximately a 21% dividend to the unsecured creditors. The liquidation value fixed in this case is zero.

---

[4] Debtor's mortgage is deducted from his salary in the amount of $1,093.91 so his net income on Schedule I factors in this amount. Schedule J does not include mortgage payment for this reason.

[5] The 1999 Ford Expedition is used by debtor's mother to drive the 3 minor children to school and school activities while debtor works & the 2005 Suzuki motorcycle is used by debtor to transport himself to his employment.

The bankruptcy court "shall confirm" a plan that meets the Code's requirements. 11 U.S.C. § 1325(a). Among these requirements is that the plan must have been filed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). [6]

The plan must satisfy additional requirements if the trustee or an unsecured creditor objects to the plan. 11 U.S.C. § 1325(b)(1). Those requirements include that "all the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." Id. § 1325(b)(1)(B) (emphasis added).

## WHAT IS TRUSTEE'S OBJECTION?

The Trustee's objection to confirmation of Debtor's Amended Plan is basically that the debtor's plan does not comply with 11 U.S.C. §1325(b)(1)(B), in that the Debtor has not committed all his "projected disposable income" to payment of the plan. [7] Trustee objects that debtor has not destined his annual tax refunds and bonus to the plan as "projected disposable income", despite debtor's pro rating of his tax refunds and bonus on his Schedule I. The Trustee does not claim, nor can he, that the Debtor experienced any significant change in his income in the six months prior to filing or that any significant change in income is expected in the future.

The Trustee is either erroneously using pre BAPCPA interpretations of "disposable" and "projected disposable income", or will in his brief, align himself with one of the three conflicting theories presently being hotly contested in three and soon to be four Circuits: the Ninth, the

---

[6] Other requirements include that: (a) the plan must comply with the Bankruptcy Code; (b) all fees and charges must be paid; (c) the bankruptcy petition must have been filed in good faith; (d) the plan must be as favorable to unsecured creditors as if there had been a liquidation under Chapter 7 of the Bankruptcy Code; (e) the plan must comply with specific restrictions on the discharge of secured debt; (f) the debtor must be able to make the payments under the plan; (g) the debtor must be current on any domestic support obligations; and (h) the debtor must have filed all federal, state, and local tax returns. 11 U.S.C. § 1325(a).

[7] A Summary of Trustee's Fifth Objection to Amended Plan dated March 5, 2008 is found at d.e. #61 filed separate from the Debtor's Memorandum of Law. We believe that all the Trustee's ancillary objections are indirectly or directly related to the core issue if debtor's plan complies with 11 U.S.C. §1325(b)(1)(B), by providing all his "disposable income" to payment of the plan and to the unsecured pool of creditors of this estate. As debtor understands the law, resolution of this issue by this Court, should resolve all other objections.

Tenth, the Eighth and soon the Seventh Circuit. We can only hope that Trustee in his yet to be filed brief or Memorandum of Law has a change of heart and recapitulates by aligning his arguments with the plain meaning of the law or the "mechanical" approach favored and used as support by the debtor.

To resolve Trustee's objection to the plan, it is necessary to describe and analyze the present state of the law after BAPCPA and the developing case law and its interpretations as these have been decided as of this date in order to persuade this Court that the plain language of §1325(b) provides a clear and specific formula for determining "disposable income" and that there is no need to seek, analyze or adopt convoluted or complicated formulas to decide if this debtor has complied or not with 11 U.S.C. §1325(b)(1)(B) in order to obtain the confirmation of an above median income debtor's plan in this District. Congress has already created the formula through the Means Test and it is not the Courts place to amend it, to extend it or to replace it just because now the pre BAPCPA method of calculating projected disposable income may seem fairer to the Trustee.

Debtor's understands that the more sound and logical of the conflicting theories at this point in time needed to decide our case is that of the "mechanical" approach or the plain language of the law and, in our opinion, the only approach that will eventually withstand review of the U.S. Supreme Court.

In the analysis that follows debtor will establish that he has committed all his disposable income to his plan in excess of that required under BAPCPA and that future and uncertain tax refunds and bonuses cannot be added to the computation of disposable and projected disposable income determined under Form 22C in the case of an above median income debtor, especially when there is no evidence of over withdrawing of taxes by this debtor. The use by the debtor of these refunds and bonuses to achieve feasibility of his plan is distinct from requiring the addition of these annual amounts to a disposable income determined as of petition date under the mathematical formula created by Congress under BAPCPA.

# SUMMARY OF ARGUMENT

The plain language of 11 U.S.C. §1325(b) provides a clear and specific formula for determining "disposable income" and requires the projection of such disposable income to determine payments to unsecured creditors. Few courts dispute that the definition and purpose of "disposable income" were significantly changed by the 2005 amendments to the Bankruptcy Code. Courts have, however, differed in interpreting the word "projected," which modifies the term "disposable income." Some courts have adopted a "mechanical" or "plain language" approach in which amounts paid to unsecured creditors are determined by mathematically projecting disposable income over the term of the debtor's plan of reorganization. Other courts use a "forward looking approach," which, much like pre-BAPCPA case law directs courts to consider the debtor's actual income and expenses at the time of filing. A third category of decisions find the mathematical determination of "projected disposable income" presumptively correct, subject to a showing of a "substantial change in circumstances."

The mechanical or plain language approach, which has been adopted by the Ninth Circuit in *In re Kagenveama* and its progeny and most recently by the bankruptcy court in *In re Turner*, 384 B.R. 537 (Bankr. S. D. Ind. 2008) currently on appeal before the Seventh Circuit Court of Appeals, is the only reading of the statute that gives meaning and purpose to all the statutory language. By contrast, the "forward looking approach" which will most probably be advocated by the chapter 13 trustee completely eviscerates the congressionally mandated definition of "disposable income." There is nothing in the language of the statute or legislative history that supports the "presumptively correct" approach.

It is precisely the plain language approach that will demonstrate to this Court that debtor has duly committed in excess of both his disposable and projected disposable income to his plan and that under the plain language of §1325(b)(3) an above median income debtor with a current monthly income and a negative disposable income already computed and determined on Form 22C is not required to adjust or add future [uncertain] tax refunds and bonuses to his CMI and/or to his disposable income to satisfy the requirements of §1325(b)(1)(B) already determined on Form 22C, notwithstanding that this debtor has pro rated his tax refunds and

5

bonuses to allow him to fund his plan in consideration of the deficit in his budget shown on Form 22C.

## ARGUMENT

## I. Projected Disposable Income is simply a mathematical projection of "disposable income" over the term of debtor's plan.

### A. *The plain language of 11 U.S.C. §1325(b) provides a clear and specific formula for determining "disposable income."*

Before BAPCPA, bankruptcy courts determined a chapter 13 debtor's "disposable income" by comparing the monthly income the debtor reported on Schedule I against the monthly expenses reported on Schedule J. *See* 11 U.S.C. § 521(a)(1)(B)(ii). Because the statute permitted the deduction from income of only those expenses deemed "reasonably necessary," 11 U.S.C. § 1325(b)(2) (2000),[8] bankruptcy courts exercised broad discretion in determining the amount of "disposable income" available to pay creditors under §1325(b)(1)(B). Once the court settled on a disposable income figure, it would multiply that figure by the number of months in the plan to ascertain the debtor's "projected disposable income" to be applied to make payments to creditors over the life of the plan. *See, e.g., Anderson v. Satterlee*, 21 F.3d 355, 357-58 (9th Cir. 1994). This was before, but with the amendments to the Code in 2005, disposable income is no longer determined in the old fashion pre BAPCPA.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 represents the most sweeping set of amendments to the Code in more than a century. *See* Bruce M. Price and Terry Dalton, "From Downhill to Slalom: An Empirical Analysis of the Effectiveness of the BAPCPA (and Some Unintended Consequences)," 26 YALE LAW & POLICY REV. 135, 136 (2007). Both the concept and purpose of "disposable income" were significantly changed by the 2005 amendments to the Bankruptcy Code. (BAPCPA) *See* 11 U.S.C. §1325(b). With the enactment of BAPCPA, the old understanding of disposable income was replaced with a new definition of

---

[8] Before BAPCPA, Section 1325(b) defined "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended" for supporting the debtor or the debtor's dependents, qualifying charitable contributions, or continued operation of the debtor's business. 11 U.S.C. § 1325(b)(2) (A), (B) (2000).

"disposable income" based upon "current monthly income" and reasonable and necessary expenses or specified allowances. *See, e.g., Maney v. Kagenveama*, 541 F.3d 868 (9th Cir. 2008); *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008); *In re Burbank*, 2009 WL 455128 (Bankr. D.R.I. Feb. 24, 2009); *In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal. 2007); *In re Brady*, 361 B.R. 765 (Bankr. D.N.J. 2007); *In re Mitchell*, 2007 WL 1290349 (Bankr. Neb. Jan. 5, 2007); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

Section 1325(b)(2) states in relevant part:

> "For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child ... less amounts reasonably necessary to be expended-(A)(i) for the maintenance or support of the debtor or a dependent of the debtor..."

At §1325(b)(3), the "amounts reasonably necessary to be expended" for above-median income debtors are determined in accordance with §707(b)(2)(A) & (B). In essence, the formula for determining "disposable income" is:

{**CMI** minus **specified adjustments** and minus **§707(b)(2) expenses**}.

Courts do not disagree that this is the formula for determining "disposable income." Rather courts have disagreed about how to apply the word "projected" to the term "disposable income." Debtor submits that projecting disposable income is merely a mathematical calculation in which "disposable income" is projected over the term of the debtor's plan. *See Kagenveama*, 541 F.3d 868, 871-76 (9th Cir. 2008)("To get from the statutorily defined 'disposable income' to 'projected disposable income,' 'one simply takes the calculation . . . and does the math.') *quoting In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

### B. The mathematical or plain language approach gives meaning to all the words of the statute and preserves the historical tie between "projected disposable income and "disposable income."

The starting point for the court's inquiry should be the statutory language of 11 U.S.C. §1325(b)(2) itself. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004); *Ross-*

*Tousey v. Neary*, 549 F.3d 1148, 1157 (7th Cir. 2008). It has been well established that when the "statute's language is plain, the sole function of the court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations omitted).

Section 1325(b)(2) states that "disposable income" is defined "for the purposes of this subsection," *i.e.*, §1325(b). The only other mention of "disposable income" in that section is the requirement that "all of the debtor's *projected disposable income* to be received in the applicable commitment period. . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Thus, if BAPCPA's definition of "disposable income" is to serve any purpose, it must be what is "projected" in determining the amount a debtor must pay unsecured creditors over the life of the plan. *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006). That is precisely how courts understood the function of the word "projected" before Congress changed the definition of "disposable income." *See Coop v. Frederickson*, 545 F.3d 652, 658 (8th Cir. 2008)(pre-BAPCPA, the court "would simply multiply the debtor's 'disposable income' by the number of months" in the plan).

Reading "projected disposable income" to mean "disposable income" multiplied by the number of months in the plan is also consistent with the common meaning of "projected." To "project" means "[t]o calculate, estimate, or predict (something in the future), based on present data or trends." *Amer. Heritage Dictionary of the English Language* (4th Ed. 2006). "Projected" in §1325(b)(1)(B) modifies the defined term "disposable income," indicating that it is the debtor's "disposable income," as defined, that is to be calculated, estimated, or predicted into the future. This reading is confirmed elsewhere in the Bankruptcy Code, which refers to "projected disposable income of the debtor (as defined in §1325(b)(2))." 11 U.S.C. § 1129(a)(15). Because "projected disposable income" is *not* defined, §1129 can only be referring to a projection of the defined term, "disposable income."

Once calculated, projected disposable income is used to determine the amount to be paid to unsecured creditors. Under amended §1325(b), "disposable income" is no longer used to determine the appropriate plan payment—a payment that previously included amounts to

holders of allowed secured, administrative, priority and general unsecured claims. Now, "disposable income" is only used to determine the payout, if any, to holders of allowed unsecured claims.

Projecting disposable income, in theory, is not remarkably difficult or different than it was prior to the 2005 amendments. *Kagenveama*, 541 F.3d at 873-74 ("Congress's changes to §1325(b) did not alter the historical tie between the concepts of 'projected disposable income' and 'disposable income'"). The significant change imposed by Congress, however, is in determining what amount is projected into the future.

Prior to BAPCPA, plan payments were calculated by projecting the difference between the amounts listed on Schedules I and J (now called "monthly net income"). Aiming to reduce the discretion that bankruptcy courts exercised in determining a chapter 13 debtor's "projected disposable income" under §1325(b)(1)(B), Congress changed the definition of "disposable income" in two significant ways. First, on the income side, Congress mandated calculation of the debtor's average income for the six months preceding the filing of the petition. *See* 11 U.S.C. §1325(b)(2) (defining "disposable income as "current monthly income," which, in turn, is defined as a six-month historical average and contains specified exclusions such as social security benefits); 11 U.S.C. § 101(10A). Congress has made clear its belief that a longer term historical income average would be more representative of the debtor's long term financial situation than a "snap shot" of the debtor's income as of the petition date and as shown on Schedule I.

Second, on the expense side, for above-median debtors, Congress specifically defined the allowable deductions from "current monthly income". Rather than a "snap shot" of the debtor's estimated expenses as of the petition date and as shown on Schedule J, for "above-median" debtors Congress has mandated that "amounts reasonably necessary to be expended shall be determined in accordance with subparagraphs (A) and (B) of § 707(b)(2)." Under such means test formula created by Congress, the total allowed expenses for "above-median" debtors are not reflective of the debtor's actual expenses. For example, §707(b)(2) directs debtors to deduct amount permitted under the IRS guidelines, irrespective of whether debtor's actual expenses are above or below the guideline amounts. See *Ross-Tousey*, 549 F.3d 1148, 1162 (7th

Cir. 2008); 11 U.S.C. § 707(b)(2)(A). Similarly, the total expense figure for an above-median debtor does not reflect actual expenses. *See In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006), *aff'd* 2007 WL 2668727 (N.D. Ill. 2007).

In sum, Congress has developed a bright-line test based on an historical average as to income and a mathematical formula as to expenses. *See* 8 Collier on Bankruptcy ¶1325.08 [1] (15th ed. rev.). As the Seventh Circuit Court recently noted in *Ross-Tousey*, the plain language view "is more strongly supported by the language and logic of the statute." *Ross-Tousey*, 549 F.3d at 1148. Indeed, nothing in the statute suggests that courts are free to adjust either the debtor's "current monthly income" or allowed expenses to arrive at a different "disposable income."

Notwithstanding, BAPCPA's bright-line test as to income and the mathematical formula as to expenses determined in debtor's Form 22C, the Trustee pretends to adjust debtor's current monthly income [CMI] by forcing the addition of future uncertain tax refunds and bonuses to debtor's CMI and in like manner also pretends to readjust and re-compute debtor's disposable income also determined in Form 22C, both which have been determined as of petition date.

## II. Court decisions adopting the "forward looking" or "presumptive" approach are unpersuasive and incorrect.

Since the enactment of the BAPCPA, some courts have adopted a "mechanical" or "plain language" approach in which amounts paid to unsecured creditors are determined by mathematically projecting disposable income over the term of the debtor's plan of reorganization. See e.g., *In re Kagenveama* and more recently *In re Joel A Turner*, 384 B.R. 537 (Bankr. S.D. Ind.2008) currently up on appeal to the Seventh Circuit Court of Appeals. Other courts use a "forward looking approach," which much like pre-BAPCPA case law directs courts to consider the debtor's actual income and expenses at the time of filing. *See, e.g., Coop v. Frederickson*, 545 F.3d 652 (8th Cir. 2008). A third category of decisions find the mathematical determination of "projected disposable income" presumptively correct, subject to a showing of a "substantial change in circumstances." *See, e.g., Hamilton v. Lanning*, 545 F.3d 1269 (10th Cir. 2008) and *Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007).

Court decisions adopting the "forward looking" or "presumptive" approach are unpersuasive and incorrect. For example, in *Frederickson*, the Eighth Circuit acknowledged that, pre-BAPCPA, it would "simply multiply the debtor's 'disposable income' by the number of months" in the plan to determine the amount of "projected disposable income" available to pay creditors. *Frederickson*, 545 F.3d at 658. The Eighth Circuit nevertheless concluded that it could now disregard the *amended* definition of "disposable income" for purposes of determining "projected disposable income" because that definition is "based upon a debtor's historical income and IRS tables that provide regional averages for common expenses" and thus "does not take into consideration a debtor's current financial situation." *Id.* In other words, the Eighth Circuit rejected projecting into the plan period the BAPCPA calculation of disposable income because it would not necessarily provide an "accurate" picture of the debtor's ability to pay. *Id.* Instead, the Eighth Circuit applied the pre-BAPCPA method for determining "disposable income." In doing so, it sanctioned the complete nullification of BAPCPA's definition of "disposable income"[9] and Congress's attendant objective—that the Eighth Circuit itself acknowledged—of "reduc[ing] the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses." *Id.*

The Eighth Circuit was apparently convinced that by rejecting Congress's chosen methodology, it was actually advancing congressional intent to "requir[e] debtors to pay more to their unsecured creditors." *Id.* But any "problem" with applying the definition of "disposable income" as it appears in the text was created by Congress and is appropriately remedied by Congress, not the courts. *See Kagenveama*, 541 F.3d at 875; *Ross-Tousey*, 549 F.3d at 1161.

The Eighth Circuit's approach not only nullifies Congress's attempt to bring more uniformity to the calculation of "projected disposable income," but it also entirely distorts the payment scheme that BAPCPA established. For example, Congress excluded social security benefits from "disposable income," but social security

---

[9] By analogy, the reasoning of *Frederickson* would lead to the conclusion that for purposes of preparing one's federal income tax return one's "adjustable gross income" could be completely unrelated to one's "gross income."

benefits will be a source of income from which payments to unsecured creditors can be required in courts applying the Eighth Circuit's approach. *See* Schedule I, Line 11. Equally problematic is the fact that the pre-BAPCPA calculation yielded an amount that was used to make *all* payments under the plan, including secured debt, priority claims, and administrative expenses. But under BAPCPA, the calculation of "disposable income" takes into account amounts to be paid for secured claims, priority claims, and administrative expenses. BAPCPA thus made a corresponding amendment to §1325(b)(1)(B) to make clear that "projected disposable income" will be applied to make payments to *unsecured creditors only.* Under the Eighth Circuit's approach, if all of a debtor's "projected disposable income" under the pre-BAPCPA methodology must now be applied only to pay unsecured debt, then a debtor may have little or no income available to pay the superior claims.

The Tenth Circuit's decision, *Hamilton v. Lanning*, 545 F.3d 1269 (10th Cir. 2008), while purporting to impose a "presumption" based limitation on the Eighth Circuit's "forward looking" approach, suffers from the same flaws. This same "presumptive" approach will most likely be advocated by the Trustee in this case. Indeed, the approach adopted by the *Lanning* Court and surely to be advocated by the Trustee is no less divorced from the text of the Code than *Frederickson*. Nothing in §1325(b) suggests that courts may ignore the definition of "disposable income," whether on a showing of "changed circumstances" or not. *Lanning*, 545 F.3d at 1282. By allowing courts to reject the BAPCPA definition, the Tenth Circuit's approach permits the very exercise of discretion that Congress purposefully took away.

Furthermore, other sections of BAPCPA show that Congress knew how to create a presumption when it wanted to. *See* 11 U.S.C. §707 (creating a presumption of abuse for Chapter 7 debtors who fail the "means test"). The entire purpose of the vaunted means test in chapter 7 is to determine whether a presumption of abuse arises. Congress did not include such a presumption in section 1325(b)(2), even though it imported important elements of the means test into the disposable income test. Where Congress includes language in one part of the statute and excludes it from another part of the same statute, it is generally presumed that Congress acted purposely in the disparate inclusion or exclusion. *See Hamdan v. Rumsfeld*, 548

U.S. 557, 126 S. Ct. 2749, 2765-66 (2006); *Russello v. United States*, 464 U.S. 16 (1983). Thus, the so-called "presumptive" approach finds no support in the text, purpose, or structure of §1325(b) and should be rejected by this Court.

Courts that have adopted the "presumptive" approach, like those that have created a new definition for "projected disposable income," have done so solely to deal with significant changes in income. See, e.g. *In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007).[10]

In this same sense, *Kibbe* is especially distinguishable from debtor's case since debtor herein has not had any significant changes in income during the six months prior to the petition and thus there is no need for this Court to consider adopting a "presumptive" approach to the facts before the Court today. We should also note that *Kibbe* deals with a below median income debtor, while the case before this Court today involves an above median income debtor.

We should also point out to the Court that those cases adopting a "presumptive" approach or the "forward looking" approach with the pretense of accommodating a debtor who has had significant changes in income during the six months prior to the petition, have failed to consider the interplay of 11 U.S.C. §101(10A)(A)(ii) and §1325(b).

§101. Definitions

(10A) The term "current monthly income"--

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by <u>section 521(a)(1)(B)(ii)</u>; or

**(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii);**

When §101(10A)(A)(ii) is factored into the equation, it is apparent that Congress knew that a strictly historical CMI might force a debtor to use income that was unrelated to the debtor's ability to pay. Therefore, §101(10A)(A)(ii) already provides for the use of a CMI that is based

---

[10] Even courts that have adopted a presumptive approach have indicated that because §1325(b)(3) states that expenses "shall be determined in accordance with subparagraph (A) and (B) of §707(b)(2)" there is no basis for deviating from those allowed figures. *See e.g., In re Teixeira*, 358 B.R. 484 (Bankr.D. N.H. 2006).

more on a debtor's actual current income. By using §101(10A)(A)(ii), a debtor could effectively alter his CMI as used in §1325(b) which would then do exactly what *Frederickson* and *Lanning* do ... use a realistic income! Section 101(10A)(A)(ii) provides for a similar outcome to the "forward looking" results in *Frederickson* and *Lanning*. Why is there a need by some courts to eliminate the new definition of disposable income in §1325(b)?

Note should be taken that §101(10A)(A)(ii) only gives the debtor the ability to change the CMI reference date, not the Trustee or a creditor. If Congress knew how to change CMI in favor of the debtor, it must have certainly known how to change CMI in favor of the creditor, yet it did not. Thus there is really no need for any court to substitute the plain meaning of the law by either a "forward looking" approach or through a "presumptive" approach to the determination of projected disposable income. BAPCPA already provides the remedy in such cases.

This Court should not disturb the careful balance among debtors in bankruptcy and their creditors that Congress achieved in enacting this new disposable income test. *See Union Bank v. Wolas*, 502 U.S. 151 (1991)("Whether Congress has wisely balanced the sometimes conflicting policies underlying [11 U.S.C. § 547] is not a question we are authorized to decide); *Kagenveama*, 541 F.3d at 875 ("If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the law.")

It is thus the "mechanical" approach or the plain meaning of the law that logically results in the conclusion that debtor herein has committed all of his disposable and projected income under the proposed Amended Plan dated March 5, 2008, and the plan should be confirmed by this Court.

Although debtor does not agree with the "presumptive" approach, the result herein would be identical to the "mechanical" approach since debtor has not experienced any significant change in his income in the six months prior to filing or that any significant change in income is expected in the future. As such, there is no need for this Court to depart from Form 22C as suggested by the *Lanning* and *Kibbe* courts.

## III. The interpretations of §1325(b) urged by the chapter 13 trustee render the definition of "disposable income" irrelevant, and produce absurd results.

### A. The chapter 13 trustee's position would produce an absurd result in which the debtors would potentially be required to pay the difference between schedules I and J only to unsecured creditors.

At the same time that Congress changed how "projected disposable income" is calculated in §1325(b)(1)(B), it changed the purpose for which "projected disposable income" is calculated. Before BAPCPA, "projected disposable income" was calculated to determine the total amount of payments the debtor was required to make "under the plan." 11 U.S.C. § 1325(b)(1)(B) (2000). Thus, the "projected disposable income" calculation was made to determine the amount to be paid to the holders of allowed secured, priority, administrative, and unsecured claims. Under §1325(b)(1)(B) as amended by BAPCPA, however, "projected disposable income" is now calculated to determine the amount of payments to unsecured creditors only. 11 U.S.C. § 1325(b)(1)(B).

As amended by Congress, §1325(b)(1)(B) plainly states that the plan must provide "that all of the debtor's projected disposable income .... will be applied to make payments to **unsecured creditors** under the plan." (emphasis added). The addition of the phrase "unsecured creditors" is a significant departure from the pre-2005 version that stated "will be applied to make payments under the plan."

The chapter 13 Trustees' position that "projected disposable income" is a forward-looking concept represented by the difference between schedules I and J or through the capture of future tax refunds and bonuses, has the absurd result that debtors will have no funds to pay secured creditors; no funds to pay adequate protection and no funds to pay back arrearages on long term debts. The Trustee's position simply takes no account of this fundamental change in language.

**B.**  **The chapter 13 trustee's arguments also could lead to the conclusion that income derived from sources that Congress excluded from "disposable income" would have to be paid to unsecured creditors.**

The court's determination of the proper method for calculating disposable income may affect other debtors whose income is derived from sources that Congress specifically excluded from 'disposable income". The chapter 13 trustee urges that "projected disposable income," as used in §1325(b)(1)(B), is based on the debtors' income and expenses as reflected on Schedules I and J and/or based on debtor's future tax refunds. The Trustee appears to propose using Form B22C as a starting point and adjusting for changes in income. These methods, however, do not take into account types of income that Congress has excluded in measuring the debtor's ability to pay and completely disregard the definition of "disposable income." For example, debtors who have Social Security income will frequently have "monthly net income"— the term used to describe the difference between Schedule I and J.   However, Form B22C will show no "disposable income" **because Congress specifically excluded Social Security income in determining CMI**. *See In re Rotunda*, 349 B.R. 324 (Bankr. N.D.N.Y. 2006).   A decision in favor of the chapter 13 trustee means that debtors would be required to pay over to creditors any of their Social Security income in excess of their expenses. Similarly, a "presumptive standard" fails to account for income specifically excluded by Congress from distribution to unsecured creditors.

In weighing all these interests, Congress created a new formula to determine the minimum amount that debtors must pay to their unsecured creditors to obtain confirmation of a chapter 13 plan over an objection. To hold that a debtor has a greater ability to pay unsecured creditors based on the estimates provided in Schedules I or J or from future tax refunds, even though the disposable income test concludes otherwise, would be to invent a new disposable income test different from the uniform standard enacted by Congress after great deliberation and effort to ensure that it appropriately balanced all of the interests involved.

For above-median income, chapter 13 debtors, Congress sought to create a mechanical formula for measuring expenses based upon the chapter 7 means test. *See* 11 U.S.C. §1325(b)(3); *In re Lee*, 352 B.R. 91 n.13 (B.A.P. 8th Cir. 2006); *In re Trammer*, 355 B.R. 234 (Bankr. D. Mont.

2006); *In re Guzman,* 345 B.R. 640, 642 (Bankr. E.D. Wis. 2006) and more recently *In re Kagenveama,* 527 F 3<sup>d</sup> 990 (9th Cir. 2008) . Under the revised disposable income test, Congress has determined what expenses are reasonably necessary, thereby relieving courts from the duty to answer the difficult questions of lifestyle and philosophy that were prevalent under the old law. *See In re Guzman,* 345 B.R. at 642; *In re Farrar-Johnson,* 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006)("Eliminating flexibility was the point: obligations of chapter 13 debtors would be subject to 'clear, defined standards,' no longer left 'to the whim of a judicial proceeding.'").

That Congress has decided to apply a consistent income formula to all debtors, protecting certain types of income from the reach of creditors, and to mandate the use of standardized expenses for above-median debtors makes the disposable income test different than it was prior to the 2005 amendments, but not unfair to unsecured creditors.

To pretend to require an above median income debtor to also add future and uncertain tax refunds or bonuses to the disposable income computation determined under Form 22C will also lead to similar results of ignoring Form 22C. Particularly in this case, where debtor has already voluntarily pro rated his tax refunds to enable him to fund his plan, but where a plain meaning of the statute when, as here, the debtor has less than a zero disposable income, should not require it.

## IV. Has discretion of bankruptcy judges been eliminated under BAPCPA in redefining Disposable Income for Above Median Debtors?

Keith M. Lundin, a bankruptcy judge and leading Chapter 13 commentator, has stated, "The lobbyists who drafted BAPCPA were apparently clueless with respect to the function and methodology that made *§ 1325(b)* the critical measure of a debtor's effort at confirmation of a Chapter 13 plan." 5 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 471.1 at 471-6 (3d ed. 2000 & Supp. 2006) at 466-1.

Lundin added:

"Disposable income" for purposes of *§ 1325(b)* is no longer based on *actual* income at or near confirmation. Instead, BAPCPA substitutes a new concept, current monthly income (CMI) that is an average of income received by the debtor during the six months before the month of the petition. Chapter 13 debtors are small, volatile economies. CMI mirrors the debtor's financial circumstances during the slide into

Chapter 13. CMI is easily manipulated by the timing of the petition. **CMI does not change as the debtor's circumstances change from the petition through the years of the Chapter 13 case. These issues disconnect the disposable income test from the reality of individual Chapter 13 debtors and their plans.**

From this doubtful platform, BAPCPA builds the new disposable income test as a series of income exclusions and expense deductions that reflect the political environment of the enactment of BAPCPA....

**For over-median income Chapter 13 debtors, the expense-policing function of an objection to confirmation has been neutralized by BAPCPA. Substituted is a mathematical formula that fixes expense deductions that will routinely be both insufficient to sustain life and in excess of any amount that would survive the reasonable and necessary test of pre-BAPCPA law."**
(Emphasis provided).

Lundin *supra*, at 466-2-466-3.

We believe that the discretion of the bankruptcy judges has been drastically curtailed under BAPCPA from a reading of the law and commentators, like Keith Lundin cited herein, precisely to alleviate Judges and litigants and offer the consumer a less cumbersome and economical and attractive alternative. Accordingly, BAPCPA's mechanical formulas should also promote and contribute to a reduction of time, effort and cost to the litigants in chapter 13 that should ultimately reap benefit to the creditors in the context of above median income debtors in chapter 13.

## CONCLUSION

With the implementation of BAPCPA, Congress fashioned a rigid, mechanical test to determine a debtor's projected disposable income. Judicial discretion has been statutorily eliminated. 11 U.S.C. §1325(b)(1)(B) prohibits the confirmation of a plan, over the objection of the Trustee or an unsecured creditor, which proposes to pay less to unsecured creditors than the projected disposable income as calculated by Form 22C. This interpretation, as we have argued herein, is consistent both with the plain language of the amendment and congressional intent. "Disposable income," as defined in §1325(b)(2), is the same as "projected disposable income." The debtor asserts that the various phrases employed by the courts which have adopted the

"forward-looking" approach are judicial creations at odds with the clear language of the statute and congressional intent.

Upon an objection to the plan, the debtor specifically must establish that all his projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors. 11 U.S.C. §1325(b)(1)(B). This debtor has met all confirmation requirements under BAPCPA in his amended plan of March 8, 2008 which today stands partially 'confirmed'.

Debtor is committing in excess of both his disposable and projected disposable income of zero throughout the applicable commitment period by offering $380 monthly for 60 months. Debtor's Amended Plan dated March 5, 2008, after payment of administrative and secured claims, offers his unsecured creditors approximately a 21% dividend, showing debtor's good faith in proposing his plan and in filing of his petition. Despite showing a deficit in his budget on Form 22C, debtor's net monthly income reflected on Schedule I is $380 through the pro rating of his tax refunds and bonus to make his plan feasible. Without adjustments to his families' household expenses and the use of the tax refunds and bonuses, debtor would not be able to fund his plan to benefit his family and his creditors, and would otherwise require the filing of a chapter 7 instead of a chapter 13.

The Trustee's desire to achieve results that it believes would more closely reflect Congressional intent provides no basis to depart from, ignore, repudiate or circumvent the plain meaning of the law. A reading of the Code whereby Form 22C is viewed merely as a starting point that gives rise to a "presumption" that can be ultimately rebutted would perforce insert language that is conspicuously absent from the statute. Any argument by the Trustee for the Court to construe the statutory provisions at issue herein as establishing a "presumption" that can be rebutted should ultimately be viewed as an enticement for the Court to edit the law, when its task should merely be to interpret what Congress enacted, not to edit it. *Lamie v. United States Tr.*, 540 U.S. 526, 536 (2004).

For all the foregoing reasons, debtor respectfully requests that this Court confirm Debtor's Amended Plan dated March 3, 2008 at d.e. #26 as meeting all requirements of the law under BAPCPA, and find that Debtor has committed all of his projected disposable income to

paying his unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1). Debtor also requests that this Court find that the surrender of tax refunds by debtors in this jurisdiction cannot be automatically added by the Trustee to the disposable income determined under Form 22C in the case of an above median income debtor, since it would be a further attempt by Trustee to replace the new definition of "disposable income" with the old understanding of disposable income prior to the enactment of BAPCPA. See 11 U.S.C. §1325(b). As the Court in *Kagenveama* and in *Alexander* and in the cited law review article of *Catching Can-Pay Debtors*, the Chapter 13 Trustees were aware of the change in law and took their concerns before the reform law was passed to Congress and Congress failed to act in response to their concerns. Absent any revision by Congress, any amendment to the statute was intentional. To also pretend to capture future and uncertain tax refunds or bonuses from debtors prospectively during the life of a plan is such an attempt to legislate by the Trustee.

"While the new law may produce less favorable results for unsecured creditors when applied to above-median income Chapter 13 debtors, it is far from absurd to hold that debtors with no 'disposable income' have no "projected disposable income." Quoting *Alexander*, supra at 750. "Furthermore, if the debtor's income increases after the plan is confirmed, the trustee may seek plan modification under §1329."

I HEREBY CERTIFY, that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF Filing System which will send a notification, upon information and belief, of such filing to the Chapter 13 Trustee and to all subscribed users. RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 11th day of May 2009.

/s/ *L. A. Morales*

L.A. MORALES & ASSOCIATES, PSC
URB VILLA BLANCA
76 AQUAMARINA
CAGUAS, PUERTO RICO 00725-1908
USDC#120011
Email lamoraleslawoffice@gmail.com